UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


In re:

                                              Chapter 11

TATO REAL ESTATE HOLDINGS, INC.,      Case No. 6:10-bk-13644-ABB


       Debtor.

_____/


**<u>DEBTOR'S DISCLOSURE STATEMENT</u>**

**September 1, 2010**


        This proposed Disclosure Statement has not been approved by the Bankruptcy Court and therefore, may not be used to solicit acceptances of the Debtor's Plan of Reorganization filed with the Court.  This Disclosure Statement may be subject to modification at or before the hearing to consider approval of the Disclosure Statement.

David R. McFarlin
Florida Bar No. 328855
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Drive
Orlando, FL 32804
Telephone (407) 648-0058
Facsimile (407) 648-0681
dmcfarlin@whmh.com

Attorneys for Debtor and
Debtor in Possession

## TABLE OF CONTENTS

**ARTICLE I -- INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE II -- BACKGROUND**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    Business of Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    C.    Liabilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    D.    Events Leading Up To Chapter 11 Case. . . . . . . . . . . . . . . . . . . . . . 2

**ARTICLE III -- DEBTOR'S BANKRUPTCY CASE**. . . . . . . . . . . . . . . . . . . . . . . . 2

**ARTICLE IV --  BUSINESS PLAN AND PROJECTIONS**. . . . . . . . . . . . . . . . . . . 2
    A.    Current Rentals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Assumptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.    Equity Infusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        2.    Revenues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        3.    Operating Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        4.    Capital Expenditures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    Financial Projections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**ARTICLE V -- SUMMARY OF PLAN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Overview of Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.    Treatment and Classification of Claims. . . . . . . . . . . . . . . . . . . . . . . 5
        1.    Unimpaired. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Impaired Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        3.    Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        4.    Allowed Administrative Expenses. . . . . . . . . . . . . . . . . . . . . . 8
    C.    Executory Contracts And Unexpired Leases. . . . . . . . . . . . . . . . . . . 9
        1.    General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    Assume. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.    Reject. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    Business Form. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    Post-Effective Date Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    F.    Provisions Governing Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    Requirement for Allowance of Claims and Interests. . . . . . . . . . 10
        2.    Date and Delivery of Distribution. . . . . . . . . . . . . . . . . . . . . . . 10
        3.    Pro Rata Distribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        4.    De Minimis Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        5.    Procedures for Resolving Contested Claims or Interests. . . . . . . 11
            a.    Objection Deadline. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            b.    No Distributions Pending Allowance. . . . . . . . . . . . . . . . 11

G.    Funding Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
H.    Discharge of Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
I.    Avoidance Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ARTICLE VI -- MANAGEMENT OF REORGANIZED DEBTOR
COMPENSATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ARTICLE VII - CERTAIN RISK FACTORS**. . . . . . . . . . . . . . . . . . . . . . . . . 12
A.    Projections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
B.    Pro Rata Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
C.    Delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**ARTICLE VIII -- ALTERNATIVES TO PLAN**. . . . . . . . . . . . . . . . . . . . . . . 13
A.    Sale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
B.    Liquidation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
C.    Other Plans. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
D.    Dismissal or Conversion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**ARTICLE IX -- ACCEPTANCE AND CONFIRMATION OF PLAN**. . . . . . . . . . 14
A.    Acceptance of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
B.    Best Interests of Creditors and Equity Security Holders -
    Liquidation Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
C.    Feasibility of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
D.    Confirmation Without Acceptance of All Impaired Classes. . . . . . . . . . 18

**ARTICLE X -- CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**EXHIBITS**

Exhibit A - PLAN OF REORGANIZATION
        Exhibit A - Unsecured Note
        Exhibit B - Funding Agreement

## ARTICLE I -- INTRODUCTION

This Disclosure Statement is being provided by TATO REAL ESTATE HOLDINGS, INC., the above -named Debtor.  The purpose of this disclosure statement is to provide information of a kind and in sufficient detail, as far as is reasonably practical in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant Class to make an informed judgment about the Debtor's plan of reorganization (the "Plan").

**NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

The information contained herein has not been subject to audit.  For that reason, as well as the complexity of the Debtor's business and the impossibility of making assumptions, estimates and projections with complete accuracy, the Debtor is unable to warrant or represent the information contained herein is without inaccuracy, although every reasonable effort has been made to insure that such information is accurate.

A copy of the Plan is attached.  The Disclosure Statement is qualified in its entirety by reference to the Plan.  If there is any inconsistency between the Plan and this Disclosure Statement, then the terms of the Plan shall control.  All capitalized terms used in this Disclosure Statement shall have the definitions specified in the Plan unless otherwise defined herein.

## ARTICLE II -- BACKGROUND

**A.**    **Debtor.**  Debtor is a Florida corporation.    The officers and directors of Debtor are:

| Name | Position |
|------|----------|
| Manuel Tato | President/Director |
| Brea Tato | Vice President |

**B.**    **Business of Debtor** .  Debtor owns a  commercial office building(the "Office Building") located at 135 Mingo Trail, Longwood, Fl.  Debtor acquired the  Office Building in 2007 for a purchase price of $950,000. The Office Building has approximately 20,000 sq feet of rentable space. Debtor has no employees.  Debtor's  approximate gross revenue was $45,500  in 2009.

     **C.**    **Liabilities**. Subject to objections and defenses, scheduled or filed Claims are estimated as follows:

      **1.**    **Secured**.

| | | |
|---|---|---|
| a. | Property taxes | $   24,000 |
| b. | 1st Mortgage | $  944,117 |
| c. | 2nd mortgage | $  246,000 |
| d | 3rd mortgage | $  164,000 |
| | Total | $1,378,117 |

      **2.**    **Priority**.        $        0

      **3.**    **Unsecured**    $  150,000

     **D.**    **Events Leading Up To Chapter 11 Case**. Debtor's tenants suffered financial hardship and became delinquent in payment of rent.  Debtor became delinquent in mortgage payments  to the first mortgage holder.  Debtor  attempted to negotiate a settlement with the mortgage holder, but was unsuccessful.  A foreclosure sale was scheduled for August 4, 2010.

**ARTICLE III -- DEBTOR'S BANKRUPTCY CASE**

     On August 2, 2010 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has managed its financial affairs as debtor in possession.   Debtor has applied for authority to retain  Wolff, Hill, McFarlin & Herron, P.A. as counsel for Debtor-in-Possession.

**ARTICLE IV --  BUSINESS PLAN AND PROJECTIONS**

     The value of the Notes and equity securities to be issued under the Plan and the estimated recoveries to holders of Allowed Claims and Interests who receive such securities, depend on the ability of the Debtor to implement the business plan and to achieve the financial results projected on the basis of the business plan.  The pro forma condensed projected statements of operations, financial position, and cash flows included in this section give effect to all provisions of the Plan.

**A.**   **Current Rentals.**. As of the Petition Date, Debtor has rented space in the Office Building as follows:

| Tenant | Monthly Rent |
|---|---|
| Coconuts Cuban Grill | $   500.00 |
| Level 1 | $2,500.00 |
| Miami Subs Grill | $1,000.00 |
| Spice Modern Steakhouse | $2,500.00 |
| Sunburst Trees and Lawncare | $2,600.00 |
| Total | $9,100.00 |

**B.**   **Assumptions.** The Debtor makes recommendations and assumptions for implementation of the business plan as follows:

**1.**   **Equity Infusion.** Under the Plan, the Debtor will receive $25,000.00. These funds will assist in paying capital and other operating expenses under the Plan.

**2.**   **Revenues**. Debtor does not project significant change in revenue during the next five years.

**3.**   **Operating Expenses.** All leases are net leases. Debtor does not project significant changes in operating expenses during the next five(5) years.

**4.**   **Capital Expenditures.** All leases are net leases. Debtor does not project significant capital expenditures during the next five(5) years.

**5.**   **Affiliate Payments.** Affiliates will continue to make payments on affiliate obligations secured by the Office Building.

**C.**   **Financial Projections.** Debtor does not, as a matter of course, make long range external forecasts or projections of anticipated financial position or results of operation. Nevertheless, Debtor has prepared the following consolidated, condensed, projected financial statements, which present, to the best of management's information and belief, the expected financial position, results of operation, and cash flow of the Debtor for the periods 2010 - 2015. The projections make numerous assumptions, some of which are set forth above, with respect to the operations of the Debtor, industry performance, general business and economic conditions, and other matters, most of which are beyond the control of Debtor. Management is responsible for the preparation of the projections set forth below and the underlying assumptions, which management believes are reasonable. The projections were not prepared with the view to compliance with the published guidelines regarding financial projections or forecasts.

Because the projections are based on a number of assumptions and are inherently subject to significant uncertainties and contingencies that are beyond the control of Debtor, there can be no assurance that the projections will be realized, and actual results may be higher or lower than those shown, possibly by material amounts.

| 2011 | Effective Date | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CASH ON HAND | $10,000.00 | | | | | | | | | | | | |
| REVENUE | | | | | | | | | | | | | |
| Rental income | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 | $9,100.00 |
| | | | | | | | | | | | | | |
| TOTAL REVENUE | $19,100.00 | $9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 | $ 9,100.00 |
| | | | | | | | | | | | | | |
| OPERATING EXP. | | | | | | | | | | | | | |
| Property insurance | | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 |
| Property taxes | | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 | 783.33 |
| pest control | | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 |
| Signage | | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 | 16.67 |
| TOTAL EXP. | | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 | $ 1,776.67 |
| | | | | | | | | | | | | | |
| Net Operating Income | | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 | $ 7,323.33 |
| Funding Agreement | $ 25,000.00 | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| TOTAL FUNDS AVAILABLE | $ 44,100.00 | $ 12,484.05 | $ 12,608.69 | $ 12,733.32 | $ 12,857.95 | $ 12,982.59 | $ 13,107.22 | $ 13,231.85 | $ 13,356.49 | $ 13,481.12 | $ 13,605.75 | $ 13,730.39 | $ 13,855.02 |
| | | | | | | | | | | | | | |
| PLAN PAYMENTS | | | | | | | | | | | | | |
| Tax Collector | $9,713.20 | | | | | | | | | | | | |
| Plymouth Park Tax Svc | $13,196.08 | | | | | | | | | | | | |
| TLSK LLC (tax cert.) | $11,030.00 | | | | | | | | | | | | |
| USNB Mortgage | | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 | 7115.37 |
| RB-Gem Mortgage* | | | | | | | | | | | | | |
| Pelloni Mortgage* | | | | | | | | | | | | | |
| Unsecured Creditors | | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 |
| Admin Expense | $ 5,000.00 | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| TOTAL PLAN PAYMENTS | $38,939.28 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 | $7,198.70 |
| | | | | | | | | | | | | | |
| CASH CARRY FORWARD | $ 5,160.72 | $ 5,285.35 | $ 5,409.99 | $ 5,534.62 | $ 5,659.25 | $ 5,783.89 | $ 5,908.52 | $ 6,033.15 | $ 6,157.79 | $ 6,282.42 | $ 6,407.05 | $ 6,531.69 | $ 6,656.32 |

* Paid by affiliates of the Debtor

## Tato Real Estate Holdings, Inc.  Four Year Proforma

| Year End | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| CASH BALANCE | $6,847.12 | $8,342.68 | $10,029.04 | $11,715.40 |
| **REVENUE** | | | | |
| Rental income | $109,200.00 | $109,200.00 | $109,200.00 | $109,200.00 |
| **TOTAL REVENUE** | | | | |
| TOTAL CASH AVAILABLE | $116,047.12 | $117,542.68 | $119,229.04 | $120,915.40 |
| | | | | |
| **OPERATING EXP.** | | | | |
| Property insurance | 11,220.00 | 11,220.00 | 11,220.00 | 11,220.00 |
| Property taxes | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 |
| pest control | 500.00 | 500.00 | 500.00 | 500.00 |
| Signage | 200.00 | 200.00 | 200.00 | 200.00 |
| **TOTAL OPERATING EXP** | $ 21,320.00 | $ 21,320.00 | $ 21,320.00 | $ 21,320.00 |
| | | | | |
| **NET OPERATING INCOME** | $ 94,727.12 | $ 96,222.68 | $ 97,909.04 | $ 99,595.40 |
| | | | | |
| **PLAN PAYMENTS** | | | | |
| USNB Mortgage | $ 85,384.44 | $ 85,193.64 | $ 85,193.64 | $ 85,193.64 |
| RB-Gem Mortgage | | | | |
| Pelloni Mortgage | | | | |
| Unsecured Creditors | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| | | | | |
| **TOTAL PLAN PAYMENTS** | $ 86,384.44 | $ 86,193.64 | $ 86,193.64 | $ 86,193.64 |
| | | | | |
| **CASH CARRY FORWARD** | $ 8,342.68 | $ 10,029.04 | $ 11,715.40 | $ 13,401.76 |

## ARTICLE V -- SUMMARY OF PLAN

The following is a summary of selected provisions of the Plan. This summary is qualified in its entirety by reference to the Plan.

**A.     Overview of Plan**.  Under the Plan, the reorganized Debtor will: (i) continue to operate its business in the ordinary course; (ii) receive $30,000.00 in capital contributions; (ii) issue Notes; and (iii) distribute cash payments.

**B.     Treatment and Classification of Claims.**  Holders of Claims or Interests will be classified and treated as follows except to the extent that the holders of such Claims or Interests agree to different treatment.  If a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, then the Claim shall be included only in the more specifically defined Class.

**1.     Unimpaired.**  The following Classes of Claims and Interests are unimpaired:

Class I - Allowed Other Secured Claims.  This Class consists of Secured Claims not otherwise classified under the Plan, including Claims secured by security deposits held by utilities.  Debtor is not aware of any material Claims in this Class.  The Plan does not alter the legal, equitable, or contractual rights of the holders of such Claims.

Class II - Allowed Non-Tax Priority Claims. This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses.  Debtor is not aware of any material claims in this Class.  Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims.

Class III - Allowed Secured Claim of Seminole County Property Tax Collector.  This Class consists of Claim asserted in the approximate amount of $9,713.20 for property taxes for 2010 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

Class IV - Allowed Secured Claim of Plymouth Park Tax Service, LLC.  This Class consists of Claim asserted in the approximate amount of $12,707.07 for property taxes for 2008 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

Class V - Allowed Secured Claim of TLSK LLC.  This Class consists of Claim asserted in the approximate amount of $11,030.00 for for property taxes for 2009 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

2.    **Impaired Claims.**  The following Claims are impaired

Class VI - Allowed Secured Claim of US National Bank, as Trustee. Bank  asserts a Claim in the approximate amount of $945,000, secured by a mortgage against the Office Building. Bank obtained a judgment of foreclosure prior to the Petition Date. The holder of the Allowed Secured Claim  will retain the lien securing the Claim and will receive on account of the Allowed Secured Claim:

    a.    a  modified renewal note on the following terms:

    i.    Interest from the Effective Date  at a rate equal to prime rate published in the Wall Street Journal on the date of hearing to consider confirmation of the Plan, plus 5%.

    ii    Equal monthly payments of $7115.37 each, commencing thirty days after the Effective Date and on the same date of each month thereafter.

    iii.    Balloon payment due seven (7) years following the Effective Date.

    iv    Principal amount of the note equal to the value of the Allowed Secured Claim.

    b.    The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

    c.    Judgment of foreclosure shall be vacated and void.

Class VII - Allowed Secured Claim of RB-Gem. On or about July 30, 2008, affiliates of Debtor entered into a settlement agreement with: i) Cascade RB-Gem LLC; ii) Clubside RB-Gem LLC; iii) Golf Brook RB Gem LLC; iv) The Landings RB Gem LLC; v) Oxford Square RB Gem LLC; vi)  Park View RB Gem LLC; vii) Sabal Park RB Gem LLC viii) Forest Glen RB Gem LLC; ix) Windsor RB Gem LLC; x) RB Gem Management LLC; and xi) Audubon Hills at Hunter's Creek, LLC. The balance owing under the settlement agreement is approximately $246,000.  As security for the obligations under the settlement agreement, Debtor granted a mortgage against the Office Building. The mortgage is recorded at book 7051, page 1591, Seminole County, Fl.  The holder of the Allowed Secured Claim  will retain the lien securing the Claim and  will receive on account of the Allowed Secured Claim:

a.      modified renewal note on the following terms:

i)  payment of the settlement amount will be deferred for one(1)  month after the Effective Date (the "Deferral Amount").

ii)  The Deferral Amount will be payable with the final installment under the settlement agreement.

b.      The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

Class VIII - Allowed Secured Claim of Pelloni Capital Corp. On or about Jan 19, 2009, affiliates of Debtor entered into a settlement agreement with Pelloni. Under the settlement agreement the affiliates are obligated to pay $163,540.50.  The obligations under the settlement agreement are secured by a mortgage against the Office Building recorded at Book 7125, page 1196, Seminole County, Florida.  The holder of the Allowed Secured Claim  will retain the lien securing the Claim and  will receive on account of the Allowed Secured Claim:

a.      modified renewal note on the following terms:

i)  payment of the settlement amount will be deferred for one(1) month after the Effective Date (the "Deferral Amount").

ii)  the Deferral Amount will be payable with the final installment under the Settlement Agreement.

b.      The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

Class IX - Allowed Unsecured Claims.   The holders of such Claims shall receive on account of such Claims a Pro Rata Share of Unsecured Notes. Debtor estimates Unsecured Claims, including Claims of Insiders, will not exceed $ 157,250.00. The amount of Unsecured Claims may be significantly higher than the amount estimated by Debtor.  The following is a summary of terms of the Unsecured Notes:

a.      Principal.  The lesser of: (i) the amount of Allowed Unsecured Claims; and (ii) $5,000.00.

b.      Security.  Unsecured.

c.    <u>Interest</u>.  None.

d.    <u>Payment</u>.  Pro Rata share of  sixty (60) equal monthly installments commencing thirty days  after the Distribution Date and on the same date of each month thereafter.

e.    <u>Form</u>.  The form of the Unsecured Note is attached to the Plan.

<u>Class X - Allowed Interests</u>.  The stockholders  of Debtor are Manuel and Brea Tato.  The Interests of stockholders  will be cancelled.  The stockholders  shall not receive nor retain any property on account of such Interest.

**3.**    **Priority Tax Claims.**  Such Claims consist of Unsecured Claims of governmental units for taxes allowed under Bankruptcy Code §507(a)(8).  Tax Claims have been filed or estimated as follows:

| <u>Creditor</u> | <u>Approximate Amount</u> |
|---|---|
| None | |

The holders of Allowed Priority Tax Claims will receive on account of such cash in the amount of the Allowed Priority Tax Claim.

**4.**    **Allowed Administrative Expenses.**  Administrative Expenses are for any cost or expense of the Chapter 11 Case allowed under Bankruptcy Code §§503(b) and 507(a)(1), including all actual and necessary costs and expenses relating to the preservation of the Debtor's estate or the operation of the Debtor's business, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Code, and all payments arising from the assumption of executory contracts pursuant to Bankruptcy Code §365(b)(1).

Administrative Expenses against the Debtor consist primarily of professional fees which are subject to prior approval of the Bankruptcy Court.  Debtor estimates administrative expenses will be less than $20,000.00

Each holder of an Allowed Administrative Expense against the Debtor shall receive on account of such Allowed Administrative Expense, the amount of the Allowed Administrative Expense in one cash payment on the Confirmation Date, or shall receive such other treatment as agreed upon in writing by the Debtor and such holder; provided that: (i) an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor; and (ii) the payment of an Allowed Administrative Expense representing a right to

payment under §§365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code may be made in one or more cash payments over a period of twelve months or such other period as is determined to be appropriate by the Bankruptcy Court.

**C.**    **Executory Contracts And Unexpired Leases.**

**1.**    **General**.  The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Rejection or assumption may be effected pursuant to a plan of reorganization. In addition to any executory contract or unexpired lease previously assumed or rejected pursuant to order of the Bankruptcy Court, the Plan constitutes and incorporates any motion by the Debtor to assume or reject executory contracts and leases.

**2.**    **Assume**. Leases with tenants as follows:

a.    Coconuts Cuban Grill
b .    Level 1
c.    Miami Subs Grill
d.    Spice Modern Steakhouse
e.    Sunburst Trees and Lawncare

**3.**    **Reject**.  The Debtor will reject all executory contracts and unexpired leases not listed in subparagraph 2 or assumed pursuant to Final Order of the Bankruptcy Court.  If an executory contract or unexpired lease is rejected, then the other party to the agreement may file a claim for damages incurred by reason of rejection within such time as the bankruptcy court may allow.  In the case of rejection of employment agreements and leases of real property, damages are limited under the Bankruptcy Code.

**D.**    **Business Form.**  Debtor will continue to exist after the Effective Date as a corporation    in accordance with the laws of the State of Florida.  Debtor's articles of incorporation and by laws  will be amended, as necessary, to:

1.    provide that the holders of any interests issued after the Effective Date by the Debtor will be entitled to vote upon all matters submitted to a vote of members ;

2.    prohibit the issuance of non-voting equity securities; and

3.    carry out the terms of the Plan.

**E.**    **Post-Effective Date Operations.**  The property of Debtor's estate will revest in the Debtor on the Effective Date.  Debtor will be allowed to operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.  All

property of Debtor will be free and clear of all Claims and Interests, except as specifically provided in the Plan.

**F.      Provisions Governing Distributions.**

       **1.      Requirement for Allowance of Claims and Interests.**  No payments or other distributions will be made to or for the benefit of any Claim or Interest that is not "allowed." The Plan defines an "Allowed Claim" as a Claim that is not a Contested Claim. If the Claim is contested, and a proof of such Claim has been filed timely, then the Claim will become an Allowed Claim: (i) if the Claim is not objected to within thirty (30) days after the Confirmation Date; or (ii) if Allowed by Final Order.

       **2.      Date and Delivery of Distribution.**  Property to be distributed to an impaired Class of Claims or Interests under the Plan shall be distributed on the Distribution Date. Property to be distributed under the Plan to a Class that is not impaired shall be distributed on the latest of: (i) the Distribution Date; and (ii) the date on which the distribution to the holder of the Claim would have been made in the absence of the Plan.

       Debtor or its designated agent, will make all distributions and deliveries to holders of Allowed Claims and Allowed Interests at the addresses set forth on the proofs of Claim or proofs of Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed or if Debtor has been notified of a change of address). If any distribution to a holder is returned as undeliverable, then no further distributions to such holder will be made unless and until the Debtor is notified of such holder's then current address, at which time all missed distributions will be made to such holder, without interest. All Claims for undeliverable distributions must be made on or before the first anniversary of the Distribution Date to prevent their being discharged and forever barred.

       In accordance with Bankruptcy Rule 3021, the record date for determining the holders of equity interests entitled to receive the distributions provided under the Plan shall be the Effective Date.

       **3.      Pro Rata Distribution.**  Unless otherwise provided in the Plan, for any Class of Claims that is impaired, the holders of such claims shall receive a Pro Rata Share of the property to be distributed to the Class under the Plan.

       **4.      De Minimis Distributions**.  Notwithstanding any other provision of the Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest. If the Plan contemplates multiple distributions then the distribution shall accrue, without interest, and will be distributed on account of the Allowed Claim or Interest if and when the amount to be distributed equals or exceeds $20.00.

5.        **Procedures for Resolving Contested Claims or Interests.**

a.        **Objection Deadline**.  The Debtor may object to any Claim or Interest within the thirty (30) days after the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy on the holder of the Claim or Interest to which an objection is made, in which event, the Claim or Interest will be treated as a Contested Claim or Interest under the Plan.

Contested Claims and Interests shall be determined and liquidated in accordance with applicable law and shall be deemed an Allowed Claim or Interest in such liquidated amount.  When a Claim or Interest becomes Allowed, then the Claim or Interest will be paid in accordance with the Plan or as may be agreed by the parties and provided for in the order allowing the Claim or Interest.  The Debtor may litigate to judgment, settle, or withdraw objections to Claims and Interests.

b.        **No Distributions Pending Allowance.**  The Debtor will reserve property to be paid on Contested Claims and Interests.  Thus, if a distribution is to be made to holders of Claims and some Contested Claims have not yet been determined and liquidated, then the Debtor will reserve the consideration to be distributed to the holders of such Contested Claim.  The amount reserved will be based on what would be paid on account of such Claims if the Claims were Allowed Claims in the full amount asserted.  After determination and liquidation or disallowance of the Contested Claims, the Debtor will make the appropriate distribution, if any, to the holders of such Claims or Interests.  Any balance representing distributions that would have been made on the disallowed portion of the Contested Claims or Interests, will be included in the funds available for distribution generally to holders of Claims or Interests in that Class.  The Debtor can give no assurance as to how long it will take to resolve Contested Claims and complete the distribution under the Plan.

G.        **Funding Agreement.**  Pursuant to the terms of the proposed  Funding Agreement,  Debtor  will receive from Brea Tato a capital contribution in the aggregate amount of $25,000.00 in consideration of a 100 % equity interest in Debtor. The  Funding Agreement is attached to the Plan. The foregoing summary is qualified in its entirety by reference to the  Funding Agreement.

H.        **Discharge of Debtor.**  The confirmation of the Plan shall effect the discharge of all Claims against the Debtor that arose prior to the Confirmation Date, to the extent provided under §1141 of the Bankruptcy Code.  All consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever against the Debtor and its assets and properties.

**I.    Avoidance Actions**.  The Debtor retains all avoidance actions under the Bankruptcy Code, including preferential transfers and fraudulent transfers.  The Debtor has not  determined if any actions exist or whether the Debtor will pursue such actions. If the Debtor pursues these actions, then the net recoveries, if any, will be property of the Debtor and used in the distribution under the Plan.

During the 90 days prior to the Petition Date, the Debtor made payments in excess of $5,850 on account of antecedent debts as follows:

Name                                                    Amount

None

## ARTICLE VI -- MANAGEMENT OF REORGANIZED DEBTOR COMPENSATION

Upon the Effective Date, the operation of the reorganized Debtor shall be the general responsibility of the Directors of  Debtor, who shall, thereafter, have the responsibility for the management, control, and operation of the reorganized Debtor.  Subject to the Plan, the management, operation, lease, sale, or abandonment of the assets of the Debtor will be in the sole discretion of the members   acting in good faith in accordance with the business judgment of the Directors  and will not be subject to the supervision of the Bankruptcy Court, the creditors, or anyone else.

## ARTICLE VII - CERTAIN RISK FACTORS

**A.    Projections.**  The fundamental premise of the Plan is the implementation of the business plan, as reflected in the projections, and the reasonableness of the assumptions underlying the projections.   The projections include, among other items, assumptions concerning (1) general economic conditions; (2) the ability to control future expenses; (3) the ability to increase revenues; (4) the ability to make necessary major expenditures; and (5) closing the Funding Agreement.

Although  Debtor believes that the estimates and assumptions included in the projections are reasonable, some or all of them may prove to be inaccurate.  Moreover, the actual results of operations are likely to vary from those set forth in the projections, and such variations may be material and adverse.

**B.    Pro Rata Distributions.**   Since the Plan proposes to make a pro rata distribution to holders of Allowed Unsecured Claims, the amount and percentage recovered by the holders of such Claims will be directly affected by the amount of all Allowed

Unsecured Claims.  Contested Claims will be resolved by the Bankruptcy Court.  The Debtor cannot predict what the total amount of Allowed Claims will be.

**C.**     **Delay.**  The disbursement of some property might be significantly delayed until Contested Claims and Interests are resolved.  Until then, the Debtor cannot calculate the appropriate amount of property to be disbursed to holders of some Claims.  Reserves will be estimated, which might allow interim or periodic disbursements to be made to holders of Allowed Claims.

## ARTICLE VIII -- ALTERNATIVES TO PLAN

Debtor has evaluated alternatives to the Plan, including: (a) the immediate sale of Debtor as a going concern; and (b) liquidation of the Debtor.  Debtor has concluded that the Plan is the best alternative and will maximize recoveries by holders of Claims and Interests, assuming confirmation of the Plan and successful implementation of Debtor's business plan. The following discussion provides a summary of Debtor's analysis leading to the conclusion that the Plan  will  provide the highest value to the holders of Claims and Interests.

**A.**     **Sale**.  Debtor has evaluated a sale of its business as a going concern and concluded that sale at this time would not result in a more favorable distribution to holders of Claims.  The believes that the sales price is depressed because: i) financing is generally not available; ii) Debtor's business operations have not been stabilized; iii) several comparable businesses are currently on the market in Debtor's competitive market. Debtor has not received offers that would provide for payment beyond Claims of Secured Creditors.

**B.**     **Liquidation.**   Debtor has analyzed whether a liquidation of the assets of the Debtor would be in the best interests of creditors.   Debtor believes that liquidation would result in substantial diminution in the value to be realized by creditors because of (i) the failure to utilize the expertise of current management;  (ii) failure to obtain new equity investment; (iii) additional administrative expenses involved in the appointment of the trustee and professionals to assist the trustee; (iv) additional expenses and Claims, some of which would be entitled to priority in payments, which would arise by reason of the liquidation and from rejection of leases and other executory contracts in connection with the termination of the Debtor's operations;  (v) the substantial time which would lapse before creditors would receive any distribution in respect of their Claims; and (vi) loss of revenue from operations. Therefore, the Debtor believes that the Plan provides a substantially greater return to holders of claims and interests than would liquidation.

**C.**     **Other Plans.**  If the Plan is not confirmed, then  Debtor or, subject to further extensions of the Debtor's exclusive period under the Bankruptcy Code, any other party in interest in the Chapter 11 Case, could attempt to formulate and propose a different plan or plans of reorganization.  Such plans might involve either a reorganization and continuation

of the Debtor's business, a sale of the Debtor's business as a going concern, an orderly liquidation of the Debtor's assets or a combination thereof.

**D.** **Dismissal or Conversion**.  If no plan of reorganization can be confirmed, then the Chapter 11 Case may be dismissed or converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.  The proceeds of the liquidation proceeding would be distributed to the creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.  If the Chapter 11 case is dismissed, then the Debtor expects that the senior mortgage holder will complete a foreclosure sale with no  distribution to junior mortgages, Unsecured Claims or Interests.

## ARTICLE IX -- ACCEPTANCE AND CONFIRMATION OF PLAN

As a condition of confirmation of the Plan, the Bankruptcy Code requires that the Court determine that:  (i) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (ii) that the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promises by the Debtor in connection with the Plan and the Chapter 11 Case.

Section 1129 of the Bankruptcy Code, which sets forth the requirements that must be satisfied in order for the Plan to be confirmed, lists the following requirements for the approval of any plan of reorganization:

1.      A plan must comply with the applicable provisions of the Bankruptcy Code, including inter alia, §1123(a)(4), which provides that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest. Such anti-discrimination provision applies to contingent claims (such as guaranty claims) as well as all other claims and interests.

2.      The proponent of a plan must comply with the applicable provisions of the Bankruptcy Code.

3.      A plan must be proposed in good faith and not by any means forbidden by law.

4.      Any payment made or to be made by the proponent, by the Debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, or in connection with such plan and incident to the case, must be approved by, or be subject to the approval of, the court as reasonable.

14

5.      (a)      (i) The proponent of a plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation of such plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under such plan; and

(ii)  The appointment to, or continuance in, such officer of such individual, must be consistent with the interests of creditors and equity security holders and with public policy; and;

(b)  The proponent of a plan must disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for each insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of a plan, over the rates of the debtor must approve any rate change provided for in such plan, or such rate change is expressly conditioned on such approval.

7.      Each holder of a claim or interest in an impaired class of claims or interests must have accepted the plan or must receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or, if the class is a class of secured claims that elects non-recourse treatment of the claims under §1111(b) of the Bankruptcy Code, each holder of a claim in such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8.      With respect to each class of claims or interests, such class must accept the plan or not be impaired under the plan (subject to the "cramdown" provisions discussed above and below under "Confirmation Without Acceptance By all Impaired Classes.")

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, a plan must provide that:

a.      with respect to an administrative claim and certain claims in an involuntary case, on the effective date of the Plan, the holder of the claim will receive on account of such claim cash equal to the allowed amount of the claim;

b.      with respect to a class of priority wage, employee benefit, consumer deposit and certain other claims described in §507(a)(1),(4)-(7) of the Bankruptcy Code, each holder of a claim of such class will receive

(i)      if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)      if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

c.      with respect to a priority tax claim of a kind specified in §507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim regular installment payments in cash

i)      of a total value, as of the effective date of the plan equal to the allowed amount of such claim;

ii)      over a period not latter than 5 years after the Petition Date; and

iii)      in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan

10.      If a class of claims is impaired under a plan, at least one class of claims that is impaired under such plan must have accepted the plan, determined without including any acceptance of the plan by any insider.

11.      Confirmation of a plan must not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is the so-called "feasibility" requirement.

12.      All fees payable under §1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of the plan, must have been paid or the plan must provide for the payment of all such fees on the effective date of the plan.

13.      A plan must provide for the continuation after its effective date of payment of all retiree benefits, as that term is defined in §1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of §1114 of the Bankruptcy Code, at any time prior to confirmation of such plan, for the duration of the period the debtor has obligated itself to provide such benefits.

Debtor believes that the Plan meets all the requirements of §1129(a) of the Bankruptcy Code (other than as to voting, which has not taken place) and will seek a ruling of the Court to this effect at the hearing on confirmation of the Plan.  You are urged to consult your own counsel to evaluate each and every one of the standards for confirmation of the Plan under the Bankruptcy Code.

**A.    Acceptance of the Plan.**  The Bankruptcy Code defines acceptance of a plan by a Class of:

1.    Claims as acceptance by holders of two-thirds in dollar amount and a majority in number of Claims in that Class, but for that purpose counts only those who actually vote to accept or reject the plan;

2.    Interests (equity securities) as acceptance by holders of two-thirds of the number of shares, but for this purpose counts only shares actually voted.  Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting a plan.

Classes of Claims or Interests that are not "impaired" under a plan are deemed to have accepted the Plan and are not entitled to vote.  Acceptances of the Plan are being solicited only holders of Claims or Interests in an impaired Class.  A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified, other than by curing defaults and reinstating maturity.  See "Description of Classification and Treatment of Claims."  Acceptances of the Plan are being solicited from holders of Allowed Claims and Interests in the impaired Classes.

**B.    Best Interests of Creditors and Equity Security Holders - Liquidation Analysis.**  To confirm the Plan, the Court must determine that the Plan is in the best interests of all Classes of creditors and equity security holders impaired by the Plan.  The "best interests" test requires that the Court find either that: (i) all members of an impaired Class of Claims or Interests have accepted the Plan; or (ii) the Plan will provide each non-accepting member of the Class a recovery that has a value at least equal to the value of the distribution that each such member would receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate what members of each impaired Class of creditors and equity security holders would receive if a debtor were liquidated, the Court must first determine the aggregate dollar amount that would be generated from the debtor's assets if the Chapter 11 case was converted to a Chapter 7 case under the Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the Claims of secured creditors to the extent of the value of their collateral, and, then, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and the Chapter 11 case.  Costs of liquidation under Chapter 7 of the Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in its Chapter 11 case (such as compensation of attorneys,

financial advisors and accountants) that are allowed in the Chapter 7 case, litigation costs, and Claims arising from the operations of the debtor during the pendency of the Chapter 11 case. The liquidation itself may trigger certain priority Claims, such as Claims for severance pay, and may accelerate other priority payments that otherwise would be due in the ordinary course of business. Those priority Claims would be paid in full out of the liquidation proceeds before the balance would be made available to pay general Claims or to make any distribution in respect of equity Interests.

In liquidation, distinctions among classes of unsecured Claims are generally eliminated. Once the Court ascertains the recoveries in liquidation of secured creditors, priority claimants, general creditors and equity security holders, those recoveries are compared with the distributions offered to each class of Claims or Interests under the plan of reorganization to determine if the plan of reorganization is in the best Interests of creditors and equity security holders of each class.

The Debtor believes that: (a) the Plan is in the best interests of creditors and equity security holders; and (b) the holders of Claims in each impaired Class will receive more under the Plan than they would in liquidation.

C.    **Feasibility of the Plan.**    Debtor believes that, after the confirmation of the Plan, Debtor will be able to perform its obligations under the Plan and continue to operate its businesses without further financial reorganization. Debtor contends that the business plan contained herein demonstrates that the Plan is not likely to be followed by the need for liquidation or further reorganization of the Debtor. Confirmation of the Plan will require the Court to determine that the Plan is feasible.

D.    **Confirmation Without Acceptance of All Impaired Classes.**    The Bankruptcy Code contains provisions for confirmation of a plan of reorganization even if the plan is not accepted by all impaired classes, as long as at least one impaired Class of Claims has accepted the Plan. The provisions for confirmation of a Plan despite the non-acceptance of one or more impaired Classes of Claims or Interests are set forth in §1129(b) of the Code.

If a Class of unsecured Claims rejects a plan, it may still be confirmed if the plan provides (a) for each holder of a Claim included in the rejecting Class to receive or retain on account of that Claim property that has a value, as of the effective date of the Plan, equal to the allowed amount of such Claims, or (b) that the holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property on account of such junior Claim or Interest.

If a Class of equity security holders rejects a plan, the plan may still be confirmed if the plan provides (a) for each holder of an Interest included in the rejecting Class to receive or retain on account of that Interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder

is entitled, or the value of such Interest, or (b) that the holder of any Interest that is junior to the Interest of such Class will not receive or retain any property under the plan on account of such junior Interest.

If the Plan is not accepted by the requisite votes received from each impaired Class, the Debtor will consider seeking confirmation of the Plan pursuant to §1129(b) of the Code.


## ARTICLE X -- CONCLUSION

DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS DESIRABLE AND IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS.  The Plan provides for an equitable and early distribution of all Classes of the Debtor's creditors and preserves value for equity security holders.  Any alternative to confirmation of the Plan, such as liquidation under Chapter 7 of the Bankruptcy Code or attempts by another party in interest to  file a  plan, would result in significant delays, litigation, and cost.   Debtor believes that a plan filed by another party in interest could only be confirmed over  objection of one or more impaired Classes, and would generate costly and time-consuming litigation. Moreover, as described above , Debtor believes that creditors will receive greater and earlier recoveries under the Plan than those which could otherwise be achieved.  FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

Dated : September 1, 2010


TATO REAL ESTATE HOLDINGS, INC.


By:  /s/ Manuel Tato            /s/ David R. McFarlin
     Manuel Tato, president     David R. McFarlin
                                Wolff, Hill, McFarlin & Herron, P.A.
                                1851 W. Colonial Drive
                                Orlando, FL  32804
                                Telephone (407) 648-0058
                                Facsimile  (407) 658-0681
                                dmcfarlin@whmh.com

                                Attorneys for Debtor and
                                Debtor-In-Possession

**EXHIBIT A**


**DEBTOR'S PLAN OF REORGANIZATION**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


In re:

TATO REAL ESTATE HOLDINGS, INC.

    Debtor.

_____/

Chapter 11

Case no.  6-10-bk-13644-ABB


## DEBTOR'S PLAN OF REORGANIZATION

### Dated September 1, 2010


David R. McFarlin
Florida Bar No. 328855
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Drive
Orlando, FL 32804
Telephone (407) 648-0058
Facsimile (407) 648-0681
dmcfarlin@whmh.com

Attorneys for Debtor and
Debtor in Possession

G:\5215\plan.wpd

## TABLE OF CONTENTS

**ARTICLE I -- DEFINITIONS - INTERPRETATION**. . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    Bankruptcy Code Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Interpretation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**ARTICLE II -- TREATMENT AND CLASSIFICATION**
**OF CLAIMS AND INTERESTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    General Rules of Classification. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.    Unimpaired. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Impaired. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    Allowed Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    Allowed Administrative Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    F.    Impairment/Classification Controversies. . . . . . . . . . . . . . . . . . . . . 7

**ARTICLE III -- EXECUTORY CONTRACTS AND UNEXPIRED LEASES**. . . . . . 8

**ARTICLE IV -- ACCEPTANCE OR REJECTION OF PLAN;**
**EFFECT OF REJECTION BY ONE OR MORE CLASSES**. . . . . . . . . . . . . . . . . . 8
    A.    Classes Entitled to Vote. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.    Class Acceptance Requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    C.    Cramdown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**ARTICLE V -- MEANS FOR IMPLEMENTATION OF PLAN**. . . . . . . . . . . . . . . 9
    A.    Funding Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.    Continued  Existence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    Restated Articles of Incorporation. . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    Revesting of Assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    Assumption of Liabilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    F.    Avoidance Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**ARTICLE VI -- PROVISIONS GOVERNING DISTRIBUTION**. . . . . . . . . . . . . . 9
    A.    Pro Rata Distribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.    De Minimis Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C.    Distribution Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.    Disbursing Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    E.    Cash Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    F.    Delivery of Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    G.    Time Bar to Cash Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**ARTICLE VII -- PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    A.    Objection Deadline. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    B.    Prosecution of Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C.    No Distributions Pending Allowances.. . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.    Escrow of Allocated Distributions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.    Distributions After Allowance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    F.    Distributions After Disallowance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ARTICLE VIII -- TRUSTEE FEES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**EXHIBITS**

Exhibit A - Unsecured Note
Exhibit B -  Funding Agreement

TATO REAL ESTATE HOLDINGS, INC., the above-named Debtor, has filed this Plan pursuant to Section 1121 of the Bankruptcy Code.

## ARTICLE I -- DEFINITIONS - INTERPRETATION

**A.**    <u>**Definitions**</u>.  For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

1.    <u>Administrative Expense</u> shall mean a cost or expense of administration of the Chapter 11 Case allowed under §§503(b) and 507(a)(2) of the Bankruptcy Code.

2.    <u>Allowed</u> when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; (b) allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

3.    <u>Bankruptcy Rules</u> mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended.

4.    <u>Bar Date</u> shall mean the date fixed by order of the Bankruptcy Court by which a proof of Claim or Interest must be filed against the Debtor.

5.    <u>Bankruptcy Code</u> shall mean 11 U.S.C. §101 et seq., and any amendments thereto.

6.    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court, Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

7.    <u>Business Day</u> shall mean any day except Saturday, Sunday, or any legal holiday.

8.    <u>Chapter 11 Case</u> shall mean the above referenced Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court.

9.    <u>Claim</u> shall mean, as defined in §101(5) of the Bankruptcy Code:  (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10.    Class means a group of Claims of Interests substantially similar to each other as classified under this Plan.

11.    Confirmation Date shall mean the date of entry of the Confirmation Order.

12.    Confirmation Order shall mean the order entered by the Bankruptcy Court confirming the Plan.

13.    Contested when used with respect to a Claim or Interest, shall mean a Claim or Interest that is not an Allowed Claim or Interest.

14.    Disallowed when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent 10 days has expired since it has been disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such 10 day period, in which case the Claim or Interest shall be disallowed 30 days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

15.    Disclosure Statement means the disclosure statement of the same date as this Plan that was filed by the Debtor and approved by the Bankruptcy Court pursuant to Bankruptcy Code Section 1125 and any amendments thereto, including all exhibits.

16.    Distribution Date when used with respect to each Claim or Interest shall mean as soon as practicable after the later of (a) the Effective Date, or (b) the first Business Day of the next calendar month after the date upon which the Claim or Interest becomes an Allowed Claim or Interest, unless the Claim or Interest becomes an Allowed Claim or Interest within fifteen days before the first Business Day of the next calendar month, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar month.

17.    Effective Date shall mean: (a) if no stay of the Confirmation Order is in effect, then the date which a Business Day selected by the Debtor which is not more than thirty (30) days following the date of the Confirmation Order; or (b) if a stay of the Confirmation Order is in effect, then the date which is a Business Day selected by the Debtor which is not more than thirty (30) days following the date the stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order.

18.     <u>Final Order</u>  means an order of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with applicable law.

19.     <u>Funding Agreement</u> means the funding agreement in the form attached hereto.

20.     <u>Interest</u> means the equity interests in the Debtor.

21.     <u>Notes</u> means the Unsecured Notes issued under the Plan.

22.     <u>Objection Deadline</u> means the date by which objections to Claims and Interests must be filed with the Bankruptcy Court which shall be 30 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

23.     <u>Office Building</u> means the Debtor's real estate and improvements located at 135 Mingo Trail, Longwood, Fl.

24.     <u>Other Secured Claims</u> means any Secured Claim except the Secured Claims separately classified under the Plan.

25.     <u>Petition Date</u> shall mean August 2, 2010, the date on which the petition for relief was filed in the Chapter 11 case.

26.     <u>Plan</u> shall mean this Chapter 11 plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

27.     <u>Priority Non-Tax Claim</u> shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4),  507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

28.     <u>Priority Tax Claim</u> shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

29.     <u>Pro Rata Share</u>  means the ratio that the amount of a particular Allowed Claim or Interest bears to the total amount of Allowed Claims or Interests of the same class, including Contested Claims or Interests, but not including Disallowed Claims or Interests, as calculated by the Debtor as of the Distribution Date.

30.     <u>Secured Claim</u> shall mean a Claim secured by a lien against property in which the Debtor has an interest, or which is subject to setoff under §553 of the Bankruptcy Code to the extent of the value (determined in accordance with §506(a) of the

Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amounts subject to such setoff, as the case may be.

31.     **Unsecured Claim** means a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, or a Secured Claim.

**B.     Bankruptcy Code Definitions**.  Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan.  The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

**C.     Interpretation**.  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

## ARTICLE II -- TREATMENT AND CLASSIFICATION
## OF CLAIMS AND INTERESTS

Claims against and Interests in the Debtor will be classified and treated as follows except to the extent otherwise agreed.

**A.     General Rules of Classification**.  Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class.  If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class.  Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by an classification made or implied herein.

**B.     Unimpaired**.  The following classes of Claims are unimpaired:

Class I - Allowed Other Secured Claims.   The Plan does not alter the legal, equitable, or contractual rights of the holders of such Claims.

Class II - Allowed Non-Tax Priority Claims. This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses.

Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims.

Class III - Allowed Secured Claim of Seminole County Property Tax Collector. This Class consists of Claim asserted in the approximate amount of $9,713.20 for property taxes for 2010 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

Class IV - Allowed Secured Claim of Plymouth Park Tax Service, LLC. This Class consists of Claim asserted in the approximate amount of $12,707.07 for property taxes for 2008 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

Class V - Allowed Secured Claim of TLSK LLC.  This Class consists of Claim asserted in the approximate amount of $11,030.00 for  property taxes for 2009 secured by the Office Building. The holder of this Claim  shall receive cash in the amount of such Claim.

C.    **Impaired**.  The following Claims and Interests are impaired:

Class VI - Allowed Secured Claim of US National Bank, as Trustee   Bank asserts a Claim in the approximate amount of $945,000, secured by a mortgage against the Office Building. Bank obtained a judgment of foreclosure prior to the Petition Date. The holder of the Allowed Secured Claim  will retain the lien securing the Claim and  will receive on account of the Allowed Secured Claim:

a.    a  modified renewal note on the following terms:

i.    Interest from the Effective Date  at a rate equal to prime rate published in the Wall Street Journal on the date of hearing to consider confirmation of the Plan, plus 5%.

ii    Equal monthly payments of $7115.37 each, commencing thirty days   after the Effective Date and on the same date of each month thereafter.

iii.    Balloon payment due seven (7) years following the Effective Date.

iv    Principal amount of the note equal to the value of the Allowed Secured Claim.

b.    The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

     c.        Judgment of foreclosure shall be vacated and void.

     <u>Class VII - Allowed Secured Claim of RB-Gem</u> .  This class consists of the Allowed Secured Claim of : i) Cascade RB-Gem LLC; ii) Clubside RB-Gem LLC; iii) Golf Brook RB Gem LLC; iv) The Landings RB Gem LLC; v) Oxford Square RB Gem LLC; vi) Park View RB Gem LLC; vii) Sabal Park RB Gem LLC viii) Forest Glen RB Gem LLC; ix) Windsor RB Gem LLC; x) RB Gem Management LLC; and xi) Audubon Hills at Hunter's Creek, LLC, The holder of the Allowed Secured Claim  will retain the lien securing the Claim and  will receive on account of the Allowed Secured Claim:

     a.        modified renewal note on the following terms:

         i)        payment of the settlement amount will be deferred for one(1) month after the Effective Date (the "Deferral Amount")

         ii)        The Deferral Amount will be payable with the final installment under the Settlement Agreement.

     b.        The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

     <u>Class VIII - Allowed Secured Claim of Pelloni Capital Corp.</u> This Class consists of the Allowed Secured Claim of Pelloni. The holder of the Allowed Secured Claim will retain the lien securing the Claim and  will receive on account of the Allowed Secured Claim:

     a.        modified renewal note on the following terms:

         i)        payment of the settlement amount will be deferred for one (1) month after the Effective Date (the "Deferral Amount")

         ii)        The Deferral Amount will be payable with the final installment under the Settlement Agreement

     b.        The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

     <u>Class IX - Allowed Unsecured Claims</u>.   The holders of such Claims shall receive on account of such Claims a Pro Rata Share of Unsecured Notes.  The Unsecured Notes shall have the following  terms:

     a.    <u>Principal</u>.  Aggregate principal amount equal to the lesser of: (i) the amount of Allowed Unsecured Claims; and (ii) $5,000.00.

     b.    <u>Security</u>.  Unsecured.

     c.    <u>Interest</u>.  None.

     d.    <u>Payment</u>.  Pro Rata share of  sixty (60) equal monthly installments commencing thirty days  after the Distribution Date and on the same date of each month thereafter.

     e.    <u>Form</u>.  The form of the Unsecured Note is attached to the Plan.

     <u>Class X - Allowed Interests</u>.  The Interests of stockholders  will be cancelled. The stockholders  shall not receive nor retain any property on account of such Interest.

**D.**    **Allowed Priority Tax Claims**.  The holders of Allowed Priority Tax Claims will receive on account of such claim cash in the amount of the Allowed Priority Tax Claim.

**E.**    **Allowed Administrative Claims**.  Except to the extent otherwise specified in the Plan, each holder of an Allowed Administrative Expense against the Debtor shall receive on account of such Claim, the amount of such holder's Allowed Expense in one cash payment on the Distribution Date, or shall receive such other treatment as agreed upon in writing by the Debtor and such holder; provided that: (i) an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor; and (ii) the payment of an Allowed Administrative Expense representing a right to payment under §365(b)(1)(A) and §365(b)(1)(B) of the Bankruptcy Code may be made in one or more cash payments over a period of twelve (12) months or such other period as is determined to be appropriate by the Bankruptcy Court.

**F.**    **Impairment/Classification Controversies**.   If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

## ARTICLE III -- EXECUTORY CONTRACTS AND UNEXPIRED LEASES

In addition to executory contracts and unexpired leases previously assumed or rejected by the Debtor pursuant to Final Order of the Bankruptcy Court, the Plan constitutes and incorporates any motion by the Debtor to:

a.      assume the following executory contracts and unexpired leases:

      (i)      Lease with Coconuts Cuban Grill
      (ii)     Lease with Level 1
      (iii)    Lease with Miami Subs Grill
      (iv)     Lease with Spice Modern Steakhouse
      (v)      Lease with Sunburst Trees and Lawncare

b.      reject all executory contracts and unexpired leases not listed in subparagraph a or assumed pursuant to Final Order of the Bankruptcy Court.

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and contracts, then the confirmation order shall constitute an order of the bankruptcy court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Effective Date. Any monetary amounts by which the contracts and leases to be assumed under the Plan are in default shall be satisfied, at the Debtor's option, by: (i) one cash payment on the Distribution Date in the amount of such default; (ii) upon such terms as may be approved by the Bankruptcy Court at the hearing on confirmation of the Plan; (iii) as otherwise agreed by the parties.

## ARTICLE IV -- ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

**A.      Classes Entitled to Vote**. Each impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan. Any unimpaired Class of Claims or Interests shall not be entitled to vote to accept or reject the Plan.

**B.      Class Acceptance Requirement**. A Class of Claims shall have accepted the Plan if it is accepted by at least two thirds in amount and more than one-half in number of the Allowed Claims of such class that had voted on the Plan. A Class of Interests shall have accepted the plan if it is accepted by at least two thirds in amount of the Allowed Interests of such Class that had voted on the Plan. If any ballot is executed and timely filed by the holder of an Allowed Claim or Interest but does not indicate acceptance or rejection of the Plan, then the ballot shall be deemed to be an acceptance.

**C.      Cramdown**. If any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Bankruptcy Code §1129(a), then the Debtor reserves the right

to request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code §1129(b).

## ARTICLE V -- MEANS FOR IMPLEMENTATION OF PLAN

**A.      Funding Agreement.**    The Debtor will close the transaction under the Funding Agreement attached hereto as Exhibit B.

**B.      Continued Existence**. The Debtor shall continue to exist after the Effective Date as a limited liability company   in accordance with the laws of the State of Florida.

**C.      Restated Articles of Incorporation.**   The articles of incorporation and by laws  of Debtor  shall be amended as necessary to satisfy the provisions of the Plan and Bankruptcy Code.

**D.      Revesting of Assets**. The property of the estate of the Debtor shall revest in the Debtor on the Effective Date, except as otherwise provided in the Plan.  On and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.  As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

**E.      Assumption of Liabilities**. The liability for and obligation to make the distributions required under the Plan, shall be assumed by the Debtor which shall have the liability for and obligation to make all distributions of property under the Plan.

**F.      Avoidance Actions**. Causes of action assertable by the Debtor pursuant to Bankruptcy Code §§542, 543, 544, 545, 547, 548, 549, 550, or 553 shall, except as otherwise provided in the Plan, be retained by the Debtor.  Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtor.

## ARTICLE VI -- PROVISIONS GOVERNING DISTRIBUTION

**A.      Pro Rata Distribution**. Unless otherwise provided in the Plan, for any Class of Claims or Interests that is impaired, the holders of such Claims or Interests shall receive a Pro Rata Share of the property to be distributed to the Class under the Plan.  If, and when, Contested Claims or Interests in any such Class become Disallowed Claims or Interest, the Pro Rata Share to which each holder of an Allowed Claim or Interest in such Class is entitled, shall increase commensurately.  Accordingly, the Debtor, in its sole discretion, shall have the right to make or direct the making of subsequent interim distributions to the holders of Allowed Claims or Interests in such Class to reflect any increases in the Pro Rata Share.  In any event, as soon as practicable after all Contested Claims or Interests in any Class receiving Pro Rata Shares have become either Allowed or Disallowed, a final distribution

shall be made to the holders of Allowed Claims or Interests in such Class to account for any final adjustment in the Pro Rata Share of such holders.

**B.**    **De Minimis Distributions**.  Notwithstanding any other provision of the Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest.  If the Plan contemplates multiple distributions then the distribution shall accrue, without interest, and will be distributed on account of the Allowed Claim or Interest if and when the amount to be distributed equals or exceeds $20.00.

**C.**    **Distribution Date**.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court:

**1.**    Property to be distributed to an impaired Class under the Plan shall be distributed on the Distribution Date.  Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made on the Distribution Date or as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date.

**2.**    Property to be distributed under the Plan to a Class that is not impaired shall be distributed on the latest of: (i) the Distribution Date; and (ii) the date on which the distribution to the holder of the Claim or Interest would have been made in the absence of the Plan.

**D.**    **Disbursing Agent**.  The Debtor or such disbursing agent as the Debtor may employ, in its sole discretion, shall make all distributions required under the Plan.

**E.**    **Cash Payments**.  Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

**F.**    **Delivery of Distributions**.  Distributions and deliveries to holders of Allowed Claims and Interest shall be made at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor has been notified of a change of address).  If any distribution to a holder is returned as undeliverable, then no further distributions to such holder shall be made unless and until the Debtor is notified of the holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All Claims for undeliverable distributions shall be made on or before the fifth anniversary of the Distribution Date.  After such date, all unclaimed property shall revert to the Debtor, and the claim of any holder with respect to such property shall be discharged and forever barred.

**G.**    **Time Bar to Cash Payments**.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of the fifth

10

anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE VII -- PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**A.** **Objection Deadline**. Unless extended by the Bankruptcy Court, the Debtor shall file any objections to Claims or Interest no later than thirty (30) days after the Confirmation Date.

**B.** **Prosecution of Objections**. The Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Contested Claims or Interests. All professional fees and expenses incurred by the Debtor from and after the Confirmation Date, shall be paid in the ordinary course of business without further order of the Bankruptcy Court.

**C.** **No Distributions Pending Allowances**. No payments or distributions shall be made with respect to any Contested Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

**D.** **Escrow of Allocated Distributions**. The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims and Interest as of the Effective Date. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim or Interest. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made or such obligations arise. If practicable, the Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

**E.** **Distributions After Allowance**. Payments and distributions from escrow to each holder of a Contested Claim or Interest, to the extent that such Claim or Interest ultimately becomes an Allowed Claim or Interest, shall be made in accordance with the provisions of the Plan governing the class of Claims or Interests to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim or Interest becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Contested Claim or Interest became an Allowed Claim or Interest shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim or Interest then been an Allowed Claim or Interest to the date such distributions are made.

**F.**    **Distributions After Disallowance**.    If any property withheld in escrow remains after all objections to Contested Claims or Interests of a particular class have been resolved, then such remaining property, to the extent attributable to the Contested Claims or Interests, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the class of Claims or Interests to which the Disallowed Claim or Interest belong.

## ARTICLE VIII -- TRUSTEE FEES

All fees payable under 28 U.S.C §1930, will be paid when due.

Dated: September 1, 2010

TATO REAL ESTATE HOLDINGS, INC..


By:   /s/ Manuel Tato                    /s / David R.McFarlin
      Manuel Tato, President             David R. McFarlin, Esquire
                                         Wolff, Hill, McFarlin & Herron, P.A.
                                         1851 West Colonial Drive
                                         Orlando, Florida 32804
                                         Telephone: (407) 648-0058
                                         Facsimile: (407) 648-0681
                                         dmcfarlin@whmh.com

                                         Attorneys for Debtor and
                                         Debtor-in-Possession

$_____                              _____, 2010
                                             Orlando, Florida


## <u>UNSECURED NOTE</u>


      The undersigned maker promises to pay to the order of _____, of
_____, the principal sum of $_____, without
interest, in sixty (60) equal installments of $_____ each, commencing
_____, and on the same date of each month thereafter.

      This note is made, executed and delivered under maker's chapter 11 plan of
reorganization (the "Plan") in the U.S. Bankruptcy Court, Middle District of Florida, Orlando
Division, Case No.  6-10-bk-13644-ABB.

      If the maker fails to pay any installment when such installment comes due and does
not cure such failure within ten (10) days after written notice of such failure from the holder
of this note, then at the option of the holder, the holder may elect to accelerate and declare
immediately due and owing the balance of the obligations owing under the note.


      TATO REAL ESTATE HOLDINGS, INC.



      By:_____
        Manuel Tato, President


**Exhibit A**

## FUNDING AGREEMENT

This Agreement is made and entered into the 1st day of September, 2010, by and between TATO REAL ESTATE HOLDINGS, INC.. (the "Debtor") and BREA TATO, ("Investors").

In consideration of the mutual promises contained herein, the parties agree as follows:

1.    Plan of Reorganization.  This Agreement is being entered into in connection with the Debtor's Plan of Reorganization dated August 30, 2010 ("Plan"), being proposed by the Debtor in a case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Middle District of Florida, Orlando Division, Case No. 6-10-bk-13644-ABB.  The defined terms used in the Plan shall have the same definition when used in this Agreement unless otherwise defined in this Agreement.

2.    Effective Date.  This Agreement shall become effective on the Effective Date specified in the Plan.

3.    Capital Contribution.  Investors shall make capital contribution to the Debtor on the Effective Date,  to be used to fund obligations under the Plan in  the amount of $25,000.00 (the Capital Contribution), payable on the Effective Date.

4.    Conditions Precedent.  The obligations of Investor  under this Agreement are subject to the following conditions, to be satisfied prior to or on the Effective Date and at the time that each installment of the Capital Contribution comes due:

a.    The Debtor's business will continue to be conducted and managed by the Debtor as Debtor-in-Possession, in the ordinary course;

b.    The Debtor will not dispose of substantial assets out of the ordinary course of business without the prior consent of the Investors;

c.    The Plan shall not have been amended or modified without the prior consent of the Investors;

d.    There shall be no material adverse change in the assets, business, or financial condition of the Debtor between the date of this Agreement and  the Effective Date;

e.    Allowed Secured Claim of U.S. National Bank shall not exceed $1 million.

f.    The Effective Date shall not occur before September 30, 2010, or after November 30, 2010.

**Exhibit B**

g.    Debtor shall not be in default under the Plan.

5.    <u>Equity Interests</u>.  Capital stock in  Debtor shall be issued to the Investor on the Effective Date, such that Investors shall hold 100% of the issued and outstanding Interests.

6.    <u>Deposit</u>.  As a condition of the obligations of the Debtor hereunder,  Investor shall deposit in escrow with the Debtor, at or prior to the hearing on confirmation of the Plan, a sum equal to ten percent (10%) of the 1st installment of the Capital Contribution.  The deposit shall be returned to the Investor, without interest, if (a) a condition precedent is not satisfied and Investors make written demand for return of the deposit;  or b) confirmation of the Plan is denied.

7.    <u>Representations</u>.  Debtor makes no representations or warranties of any kind.

8.    <u>Taxes</u>.  Investors shall pay all transfer, stamp or intangible taxes relating to, occurring out of, or in connection with this transaction, if any.

AGREED to as of the date first set forth above.


TATO REAL ESTATE HOLDINGS, INC.        INVESTOR


By:    _____        _____

    Manuel Tato, President                Brea Tato